UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JOHN EDWARD GILCREASE, SR | CIVIL ACTION NO. 20-cv-1322 |
| VERSUS | CHIEF JUDGE HICKS |
| STEVE PRATOR, ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

John Edward Gilcrease, Sr. ("Plaintiff") filed this civil action based on a variety of claims that he alleges arose during his stay as a pretrial detainee at the Caddo Correctional Center ("CCC"). He names as defendants Sheriff Steve Prator, Commander Rick Farris, Sgt. M. Taylor, and Sgt. T. Englade. Before the court is Defendants' Motion for Summary Judgment (Doc. 29) that attacks the claims on the merits and asserts the defenses of qualified immunity and, with respect to some claims, failure to exhaust administrative remedies. For the reasons that follow, it is recommended that the motion be granted and that all of Plaintiff's claims be dismissed.

**Limitation of Remedies**

Plaintiff's claims include exposure to smoke from synthetic marijuana, a disagreement about the mail policy and religious material, discipline for abuse of the Kite system, retaliation for reporting a fire hazard, blocking of calls to his wife, non-compliance with administrative grievance rules, and depravation of telephone minutes. None of the claims, except for potentially the smoke exposure claim, asserts a physical injury.

Congress has directed that no federal civil action may be brought by a prisoner confined to a jail or correctional facility "for mental or emotional injuries suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The statute bars recovery of compensatory damages even if the violation at issue is a First Amendment claim or other claim not usually accompanied by physical injury. Geiger v. Jowers, 404 F.3d 371, 374-75 (5th Cir. 2005).

The only damages that would be available to Plaintiff if he prevailed on the merits of his non-injury claims would be nominal and punitive damages. They are not barred by the physical injury requirement. Hutchins v. McDaniels, 512 F.3d 193, 197-98 (5th Cir. 2007); Boyd v. Driver, 495 Fed. Appx. 518, 524 (5th Cir. 2012). Nominal damages are typically $1. Punitive damages are available in a Section 1983 case only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 103 S.Ct. 1625 (1983); Williams v. Kaufman County, 352 F.3d 994, 1015 (5th Cir. 2003).

Nominal and punitive damages might be available despite the lack of a physical injury, but Plaintiff has waived any claim to monetary damages of any kind. He submitted Doc. 38, which began with the statement, "And I want to move my case to no monitary (sic) gain." Plaintiff stated that stopping what happened to him was more important. Plaintiff also stated in his opposition to the motion for summary judgment that he had asked for this civil action "to be a non-monitary (sic) case, so that your magistrate will see this case isn't about monitary (sic) gain." Doc. 39, pp. 1-2.

The only other potential remedies are declaratory or injunctive relief, but those were rendered moot when Plaintiff was transferred from CCC to another facility. A prisoner's transfer to another facility "render[s] his claims for declaratory and injunctive relief moot." Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001) (claims for injunctive and declaratory relief based on exposure to asbestos were mooted by transfer to another prison). See also Cooper v. Sheriff, Lubbock County, 929 F.2d 1078, 1084 (5th Cir. 1991) (claims for injunctive relief based on denial of food at prior jail were moot).

Plaintiff filed this action on October 8, 2020. He was given a prison sentence that same day based on prior guilty pleas to second-degree battery, false imprisonment, and 15 counts of violation of a protective order. Doc. 29, Ex. E. In March 2021, he was transferred to a Bossier facility, and more recently he was transferred to a Tensas Parish facility. Docs. 12 & 42. Any suggestion of injunctive relief based on the possibility that Plaintiff might someday be transferred back to CCC "is too speculative to warrant relief." Herman, 238 F.3d at 665.

No damages are available to Plaintiff due to the absence of possible physical injury related to all but one claim, together with his express waiver of all monetary remedies. Any claims for declaratory or injunctive relief are moot due to his transfer. That leaves no available remedy for any claim. An actual case or controversy must exist at every stage in the judicial process. If it becomes impossible for the court to grant an effective remedy, the case is moot and subject to dismissal. Motient Corp. v. Dondero, 529 F.3d 532, 537 (5th Cir. 2008). Dismissal of this case is warranted for this reason, but the court will alternatively address Plaintiff's claims based on the merits or asserted defenses.

**Summary Judgment Burdens**

Defendants attack the various claims by motion for summary judgment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Qualified Immunity**

Defendants challenge the claims on the merits and assert defenses of qualified immunity. When evaluating qualified immunity, the court must ask whether the facts, when taken in the light most favorable to the plaintiff, show that a particular officer's conduct violated a constitutional right that was clearly established at the time. Valderas v. City of Lubbock, 937 F.3d 384, 389 (5th Cir. 2019).

"Overcoming qualified immunity requires showing clearly established law supporting the plaintiff's claim, and that demands 'that the legal principle clearly prohibit

the officer's conduct and the particular circumstances before him.'" Templeton v. Jarmillo, ___ F.4th ___, 2022 WL 765003, *2 (5th Cir. 2022), quoting District of Columbia v. Wesby, 138 S.Ct. 577, 590 (2018). A plaintiff does not need to identify a case "directly on point" to meet his burden, but he must identify case law that places the constitutional question beyond debate. Templeton, citing Ashcroft v. al-Kidd, 131 S.Ct. 2074 (2011). Citing case law generally referring to a claim, such as excessive force or unlawful search, does not suffice. Templeton, at *2.

**Smoke Exposure**

Plaintiff alleged in his original complaint that he "was forced to endure toxic smoke." An amended complaint (Doc. 6) claimed that mojo smoking had gone on for two months and, the prior weekend, "they burnt D-Seg up in the jail." When the court asked him to provide additional facts, he stated in an amended complaint (Doc. 9, p. 4) that the sheriff's department did not provide a safe, smoke-free environment, and he was "trapped in a cell and having to endure the toxic mojo smoke." He said his complaints fell on deaf ears.

Defendants offer declarations in compliance with 28 U.S.C. § 1746, which are competent summary judgment evidence. Hart v. Hairston, 343 F.3d 762, 764 n.1 (5th Cir. 2003); Cooper v. Fisher, 676 Fed. Appx. 355, 357 (5th Cir. 2017). Defendants state that synthetic marijuana, known as mojo, is a problem that she sheriff's office has made considerable efforts to defeat. They explain that synthetic marijuana and other drugs are placed into liquid form and then applied to correspondence that is mailed to inmates. Once

dried, it is difficult to see the substance. Inmates ignite the paper, often using batteries and other sources of electric current to cause sparks.

Sgt. Michael Taylor explains that CCC now scans all incoming mail and provides the inmate with a digital record of the communication to be read on a tablet in the housing unit. Outsiders have used envelopes falsely purporting to be from attorneys in an effort to avoid screening, so staff now opens legal mail in the presence of the inmate, photocopies it without reading, and provides the copy to the inmate. Inmates who are caught with mojo are addressed with investigations and administrative or criminal proceedings. Taylor states that the sheriff's office has made extensive efforts to stop the use of mojo in the facility.

To prevail on a claim of exposure to second-hand smoke, an inmate must show that he is being exposed to unreasonably high levels of smoke. One element of the claim is to show that jail officials demonstrated a deliberate indifference to his plight, meaning the official was both aware of the facts from which an inference could be drawn that a substantial risk of harm existed, and they drew the inference. Helling v. McKinney, 113 S.Ct. 2475, 2482 (1993); Farmer v. Brennan, 114 S.Ct. 1970 (1994).

Defendants met their summary judgment burden by presenting competent evidence that undermines any claim of deliberate indifference to the mojo issue. Plaintiff's response to the motion did not include any competent evidence that would create a genuine issue of material fact on that critical element of his claim. Defendants are, therefore, entitled to summary judgment on the merits of this claim.

Defendants also challenge this claim on the grounds that Plaintiff did not exhaust available administrative remedies before he filed suit. A federal statute provides that no

action shall be brought with respect to prison conditions under 42 U.S.C. § 1983 or other federal law by a prisoner confined in a jail or other correctional facility "until such administrative remedies as are available are exhausted." 42 U.S.C. § 19997e(a). The statute requires proper exhaustion in accordance with jail procedures. Woodford v. Ngo, 126 S.Ct. 2378 (2006).

Failure to exhaust is a defense on which the defendants bear the burden. Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). Sgt. Thomas Englade states in a declaration that the jail has a three-step grievance procedure, but Plaintiff did not file a grievance or otherwise exhaust his administrative remedies with respect to a claim of mojo fumes exposure. Doc. 29-3, Ex. B. Plaintiff's response to the motion does not address this defense. Defendants have met their summary judgment burden and demonstrated that they are also entitled to dismissal of this claim for failure to exhaust administrative remedies.

**Mail Policy; Religious Materials**

Plaintiff did exhaust his administrative remedies with respect to a claim that on three occasions between April and August 2020 he was not permitted to mail a "religious" book from the facility. Plaintiff's grievance alleged that he tried to mail a book to his father and submitted it to the mailroom in an envelope with two stamps affixed. Plaintiff complained that Sgt. Taylor returned the item to him and said that it violated the rules.

Taylor's response to the grievance stated that the outgoing mail, which had "Christian Book" written on the envelope, could not be mailed because inmates are not permitted to send out personal property using a stamped envelope. At the second step, the commander stated that Taylor had explained the proper procedure concerning the piece of

mail and had spoken to Plaintiff on several occasions about the matter. His request to mail the book from the jail in an envelope was denied. The step three response repeated that inmates are not allowed to send out personal property using a stamped envelope. The proper route is to complete a property release request on a tablet, as is explained in the inmate handbook. Doc. 29-3, pp. 4-17.

Sgt. Taylor states in his declaration that it is jail policy for oversized/overweight outgoing mail, which would include books, that the inmate provide the material to the mailroom to be weighed and the correct postage noted. The cost of the postage is then taken from the inmate's account, and the item is mailed. Plaintiff instead simply submitted a book in an envelope with two stamps, which Taylor says was inadequate postage based on the weight of the item.

Plaintiff makes a related complaint about his receipt of religious materials by mail. He alleged in his original complaint that Defendants stopped all religious material from coming into the jail after August 17, 2020. He alleged in his amended complaint that his Jehovah's Witness mail was returned to sender, and his Kite asking for such material was denied. Sgt. Taylor states in his declaration that he has no part in decisions regarding distribution of religious materials. Those materials are directed to the chaplain, who addresses the procedure for inmate access in light of the mojo precautions.

Chaplain Antonia Hammond states in a declaration that, because of the dangers of mojo on paper that is mailed to the jail, religious publications cannot be mailed to a particular inmate. Instead, material is provided to the chaplain and considered donated to the facility and made available to all inmates. Inmates have access to electronic tablets that

contain thousands of publications, including religious materials. If an inmate has an additional request, the chaplain addresses it and responds. Doc. 29-5, pp. 1-2.

Plaintiff responds, regarding his effort to mail a book, that none of the envelopes returned by Sgt. Taylor noted how much postage was due. Plaintiff also points out that Sgt. Taylor's declaration did not rely on the grievance response that inmates are not allowed to mail out personal property by a stamped envelope. In response to the chaplain's declaration, Plaintiff offers his unsworn assertion that he submitted Kites to the religious coordinator that went unanswered. Plaintiff did not submit an affidavit or other competent summary judgment evidence.

These claims are defeated because, as discussed above, there is no remedy available. Also, Plaintiff has not shown that he has a constitutional right to mail books to persons outside the jail or that the policies at the jail violated any such right. It appears that Plaintiff could have mailed the book if he had followed the appropriate procedures regarding personal property and postage, and those procedures were explained to him.

With respect to receipt of religious materials, Defendants submitted competent summary judgment evidence that undermined the allegations and shifted the burden to Plaintiff to come forward with competent summary judgment evidence that creates a genuine issue of material fact. Plaintiff's mere unsworn claims in his memorandum did not meet his summary judgment burden. Houston v. Texas Department of Agriculture, 17 F.4th 576, 581-82 (5th Cir. 2021); Frazier v. Keith, 707 Fed. Appx. 823, 825 (5th Cir. 2018) (affirming summary judgment for prison officials). "Even pro se litigants may not

oppose summary judgment motions with unsworn materials." Turner v. Baird, 707 Fed. Appx 290, 291 (5th Cir. 2017), citing Gordon v. Watson, 622 F.2d 120, 123 (5th Cir. 1980).

**Disciplinary Charges**

Plaintiff alleged in his amended complaint (Doc. 9, p. 7) that Sgt. Taylor harassed him by issuing disciplinary charges. One charge was allegedly based on Plaintiff having more than once grievance lodged at the first step at one time, despite Plaintiff being warned that this was a violation of procedure. The second charge was allegedly issued by Sgt. Taylor because Plaintiff reported a fire hazard.

Sgt. Taylor states in his declaration that it was Sgt. Englade who issued a disciplinary charge because Plaintiff filed multiple grievances at the same time, in violation of the ARP policy. Taylor states that the only discipline he issued to Plaintiff was for Plaintiff flooding the mail room with kites that were based on complaints not related to the mail. With respect to Plaintiff's claim about reporting a fire hazard, Taylor states that Plaintiff did report that plastic chairs in the jail were a fire hazard. Taylor says that he did not believe this report, but he told Plaintiff to report any such issue to the housing unit deputies. Taylor states that he took no action against Plaintiff for making that report.

In response to the motion, Plaintiff alleges that he did receive a disciplinary charge based on his reporting of a fire hazard, and it resulted in loss of phone and mess privileges for five days. But Plaintiff makes clear that this was done "by Sgt. Childress in DHA." Doc. 39, p. 5. Plaintiff attaches a disciplinary report (Doc. 39, p. 9) that indicates Plaintiff was issued a disciplinary charge for sending kites to the mail clerk about issues that had nothing to do with the mail, in violation of a handbook provision regarding

Page 10 of 18

repetitive/frivolous requests that could subject an inmate to disciplinary action. The report lists five officers as giving authorization for the report, and Sgt. Taylor is among them.

The first flaw with respect to this claim is that there is no available remedy, as discussed above. The claim also fails on the merits. Prison officials may not retaliate against prisoners for exercising their right to file grievances. Petzold v. Rostollan, 946 F.3d 242, 252 (5th Cir. 2019). But to succeed on a retaliation claim, the prisoner must overcome a "significant burden." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). He must demonstrate (1) a specific constitutional right, (2) defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation. See Bibbs v. Early, 541 F.3d 267, 270 (5th Cir. 2008). The prisoner must provide direct evidence of intent and causation, or at least establish a "chronology of events from which retaliation may be plausibly inferred." Woods, 60 F.3d at 1166.

Defendants' evidence indicates that there was a sound basis for the disciplinary charge related to kite abuse. Plaintiff has not submitted any evidence to the contrary. Plaintiff has submitted evidence that he filed administrative grievances, but he has not pointed to any comment by a named defendant or the timing of certain events that would indicate or imply that retaliation was behind the disciplinary charge. Given the lack of competing evidence, Plaintiff has not overcome his significant burden with respect to this claim. Plaintiff also submitted no evidence in response to Sgt. Taylor's denial of being involved in the alleged fire hazard disciplinary charge. Rather, Plaintiff states that this charge was issued by Sgt. Childress, who is not a defendant. All claims related to these events should be dismissed.

**Blocking Phone Calls**

Plaintiff alleged in his amended complaint (Doc. 9, p. 7) that Sgt. Taylor wrongfully prohibited him from talking to his wife on the jail telephone. Sgt. Taylor responds in his declaration that inmates are allowed phone privileges and video visitation in addition to in-person visitation. But Plaintiff was subject to a court-issued protective order that prohibited phone contact with his wife. Taylor states that he complied with another officer's request to implement the protective order.

Detective Demetrice Adams-Ellis states in a declaration that he became aware that Plaintiff was violating a protective order that prohibited him from contacting his wife, Connie Clyburn. Adams-Ellis contacted Sgt. Taylor and asked that calls be blocked to prohibit further contact in violation of the order. Adams-Ellis attaches a protective order issued in June 2019. Doc. 29-4. Plaintiff submits what he contends is a court order dated September 14, 2020 that dissolved the protective order. Doc. 36. Plaintiff did not file this action until October 2020, so the order was apparently in place for much of his stay at CCC.

Prisoners have "no right to unlimited telephone use." Lopez v. Reyes, 692 F.2d 15, 17 (5th Cir. 1982). The Fifth Circuit has recognized that other courts have observed that a prisoner's right to telephone access is subject to rational limitations in the face of legitimate security interests of a penal institution. Waganfeald v. Gusman, 674 F.3d 475, 485 (5th Cir. 2012), citing Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994) and Benzel v. Grammar, 869 F.2d 1105, 1108 (8th Cir. 1989).

Such decisions recognize that maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation of the retained

constitutional rights of both convicted prisoners and pretrial detainees. Thus, prison and jail officials are accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. Waganfeald, 674 F.3d at 485 (jailer was not obligated to allow pretrial detainees to use cell phones when land lines were disrupted by a hurricane for several days). District courts have also stated that detainees have a limited right to telephone access, but jailers may impose rational limitations within their broad discretion to administer the conditions of confinement. DeGrate v. Toney, 2009 WL1309728, *6 (W.D. La. 2009); Hogan v. Terrebonne Parish Criminal Justice Complex, 2015 WL 4716044, *4 (E.D. La. 2015).

The summary judgment evidence shows that Plaintiff was appropriately barred from contacting his wife based on a protective order. Plaintiff contends that the prohibition continued even after the protective order was revoked, but Plaintiff has not pointed to any clearly established law that would have mandated immediate reinstatement of the ability to call his wife/victim after the order ended. Absent such a showing, Defendants are entitled to qualified immunity from any claim for damages—which in any event has been waived or is unavailable due to the lack of a physical injury—and any claim for injunctive relief was made moot when Plaintiff was transferred.

Plaintiff makes a related complaint that Sgt. Taylor or other deputies listened to his phone calls, but that is a routine part of jail security that does not offend the constitution. Massey v. Cain, 2016 WL 8201926, *17 (E.D. La. 2016) ("Courts have consistently held that detainees lack an objectively reasonable expectation of privacy in phone calls made

from prisons or jails"); United States v. 89.9270303 Bitcoins, 2021 WL 4307375, *5 (W.D. Tex. 2021) (pretrial detainee had no reasonable expectation of privacy that prevented recording of calls he made from jail to his wife). All claims related to telephone policy or restrictions should be dismissed.

**Limit on Books**

Plaintiff alleged in his original complaint that jail officials stopped all reading material from coming into the jail and dictated what he could read. He added in his amended complaint that inmates were limited to four books, and the jail stopped allowing books or magazines to be mailed to inmates. He acknowledged that electronic tablets with a book app loaded with 61,000 books were made available, but he complained that some inmates hid the tablets in their cells, which gave him no access to books.

Sgt. Taylor explains in his declaration that this was part of the "nuisance contraband" policy put in place, at least in part, due to the mojo problem. The policy was intended to limit the amount of combustible paper material in cells. Inmates were allowed to keep four books. Additional reading material was provided on electronic tablets containing more than 40,000 books and magazines, plus other hard copy materials were distributed as requested by inmates.

Plaintiff's response to the motion for summary judgment does not address this claim. There is no available remedy, as discussed above, and Plaintiff has not overcome the plea of qualified immunity by pointing to clearly established law that would hold unconstitutional the reading materials rules that were in place at the time he was in the jail. Summary judgment should be granted with respect to all claims related to this issue.

The same is true of Plaintiff's complaints about the availability of electronic tablets. Sgt. Taylor states in his declaration that in the housing units each cell is provided with a tablet that is accessible to inmates in the cell. In segregation, where security is stricter, there are 16 cells and eight available tablets at the deputy's station. The tablets are kept at the deputy's station because inmates have used the batteries from the tablets to ignite mojo. Plaintiff has not responded to this evidence or otherwise explained how he has a constitutional claim or viable remedy based on tablet availability at the jail during his stay.

**Compliance with Grievance Rules**

Plaintiff alleged in his original complaint that Defendants were "going against the laws on grievances." His amended complaint added that he had a right to pursue a grievance but was denied a request for a copy of his grievance for his records. The record shows that Plaintiff has not encountered difficulty in pursuing grievances or lawsuits. Part of his problem is that he has attempted to pursue too many grievances at one time, in violation of the rules. In any event, Plaintiff "does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction." Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005). Plaintiff has not demonstrated that there is clearly established law that any named defendant violated in relation to the administration of the grievance system.

**Phone Minutes**

Plaintiff complained in his complaint that between March and October 2020 he had phone call minutes stolen from him, but the sheriff's department did nothing. Plaintiff

added in his amended complaint that his "inmate information was compromised," which allowed his call minutes to be stolen, and his grievances did not result in their restoration.

Sgt. Taylor explains in his declaration that City Telecoin, the vendor of telephone services at the jail, donated ten minutes of free calls to each inmate, each week, for a six-month period when Covid restrictions made in-person contact difficult. Unfortunately, Taylor states, inmates stole documentation from deputy's stations that allowed them to steal other inmates' donated minutes. Upon discovery, the sheriff's office added a two-tier system to access the donated minutes. The caller had to use the booking and sheriff's office number, as well as the eight-digit date of birth for the inmate. Unfortunately, acquaintances of inmates outside the jail researched birthdates from public records and communicated them to inmates who would use the information to continue to steal phone time. Inmates were also known to trade donated minutes, in exchange for commissary items or the like. In any event, Taylor concludes, Plaintiff did not pay for the minutes. They were donated, and the sheriff's office did not steal them from Plaintiff.

Plaintiff takes issue with Sgt. Taylor's description of the two-tier procedure for placing a call. He contends that it was in place for kiosk phones and tablets but not for the "regular phones." Whatever the situation was, there is no competent evidence that any named defendant stole telephone minutes from Plaintiff. At best, Plaintiff asserts a negligence claim for failure to protect his phone time, but 42 U.S.C. § 1983 does not provide a cause of action against a state official for a mere negligent act that causes unintended injury. Daniels v. Williams, 106 S.Ct. 662 (1986) (affirming dismissal of inmate's claim that he slipped on a pillow negligently left on the stairs by a deputy);

Andrews v. Belt, 274 Fed. Appx. 359, 360 (5th Cir. 2008) ("Andrews's assertion that the defendant may have known about the leaky toilet but failed to repair it at most alleges negligence, which is not actionable under § 1983"). Any due process claim based on the deprivation of property also appears to be foreclosed by the Parratt/Hudson doctrine, because Louisiana law provides an adequate remedy for both intentional and negligent deprivations of property. Deramus v. Claiborne Par. Det. Ctr., 2021 WL 6427047, *9 (W.D. La. 2021), citing Copsey v. Swearingen, 36 F.3d 1336, 1342-43 (5th Cir. 1994). Defendants are entitled to summary judgment on this final claim.[1]

Accordingly,

It is recommended that Defendants' Motion for Summary Judgment (Doc. 29) be granted and that all claims against all defendants be dismissed with prejudice.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

---

[1] Defendants have asserted failure to exhaust administrative remedies with respect to several of the claims. The defense was addressed with respect to the smoke exposure claim, but discussion was omitted with respect to others because it was simpler to resolve the claims on the merits or based on qualified immunity.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 30th day of March, 2022.

Mark L. Hornsby
U.S. Magistrate Judge